UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFERY KRAMMES,

    Petitioner,

v.

RANDALL HAAS,

    Respondent.
_____/

Case No. 2:15-cv-14486

HON. STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION [1], DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Jeffrey[1] Krammes, a state prisoner at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Krammes challenges his Wayne County, Michigan convictions for criminal sexual conduct and domestic violence. He alleges as grounds for relief that certain testimony was improperly admitted at his trial and that his sentence is cruel and unusual punishment. The State argues in an answer to the petition that Krammes' evidentiary claim is not cognizable on habeas review, that Krammes' sentence is constitutional, and that the state appellate court reasonably denied relief on both of Krammes' claims. The Court agrees that Krammes' claims do not warrant habeas relief. Accordingly, the habeas petition will be denied.

---

[1] Although Krammes spelled his first name "Jeffery" on the face of his habeas petition, he signed the petition as "Jeffrey" Krammes. Accordingly, the Court is using the spelling "Jeffrey."

## BACKGROUND

Krammes was charged with second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(b), and domestic violence, Mich. Comp. Laws § 750.81(2). The charges arose from an incident that occurred in Krammes' home on July 11, 2012, in Woodhaven, Michigan. Krammes was tried before a jury in Wayne County Circuit Court, where

> the victim and defendant's girlfriend testified to the following facts. Defendant awoke his 14–year–old daughter, the victim, in the early morning to watch television. The victim and defendant were in defendant's home, where the victim lived with defendant and defendant's girlfriend. Defendant and the victim lay down together on the couch. Defendant pulled down the victim's shorts, got on top of her, and began touching her genitals with his genitals. Defendant then penetrated the victim and began having intercourse with her. Defendant's girlfriend, who had been asleep upstairs, came downstairs and witnessed defendant and the victim having intercourse. Defendant's girlfriend contacted the police later that morning. In addition to the victim and defendant's girlfriend, defendant's older daughter testified that defendant had committed sexual acts against her 20 years before. Defendant testified on his own behalf, and denied any sexual contact or penetration with the victim or his older daughter. Defendant asserted that his girlfriend reported him to police because he had ended their relationship the morning after the alleged incident because she had a drug addiction. Defendant further stated that he was convicted after taking a plea for the sexual assault of his older daughter, and served three and a half years in prison. According to defendant, he took a plea to avoid losing custody of his older daughter.

*People v. Krammes*, No. 314386, 2014 WL 2881155, at *1 (Mich. Ct. App. June 24, 2014).

The domestic violence charge arose from testimony that Krammes struck his girlfriend on the face with his fist after the girlfriend witnessed Krammes having sexual intercourse with his daughter. 11/13/12 Trial Tr., pp. 132, 154–55. Petitioner also denied that charge. 11/14/12 Trial Tr., p. 94.

2

On November 14, 2012, the jury found Krammes guilty, as charged, of second-degree criminal sexual conduct and domestic violence. *Id.*, pp. 144–45. On December 4, 2012, the trial court sentenced Krammes as a habitual offender, fourth offense, to a term of twenty-five to forty years in prison for the criminal sexual conduct and to a concurrent term of three months in prison for the domestic violence, with 146 days of jail credit. 12/4/12 Sentence Tr., p.28.

Krammes raised his habeas claims in an appeal of right, but the Michigan Court of Appeals affirmed his convictions and sentence in an unpublished, *per curiam* opinion. *See Krammes*, 2014 WL 2881155. On November 25, 2014, the Michigan Supreme Court denied leave to appeal. *See People v. Krammes*, 497 Mich. 905 (2014). On December 29, 2015, Krammes filed his habeas corpus petition.

## EXHAUSTION OF STATE REMEDIES

Krammes' first claim alleges that the trial court abused its discretion by allowing the prosecution to present testimony from Krammes' older daughter. The State maintains that Krammes did not exhaust state remedies for this claim by presenting the claim as a federal constitutional issue in state court.

The doctrine of exhaustion of state remedies requires habeas petitioners to fairly present their claims to the state courts before raising the claims in a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1); *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009). "This does not mean that the applicant must recite 'chapter and verse' of constitutional law," *Wagner*, 581 F.3d at 415, but "the habeas petitioner must present

his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Although Krammes did not raise his first claim as a federal constitutional issue in state court, he also has not raised the claim as a federal constitutional issue here. Therefore, his claim is plainly meritless, because the Court may entertain an application for the writ of habeas corpus only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, the exhaustion rule is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). A federal district court may deny a habeas petition on the merits despite the petitioner's failure to exhaust state remedies for his claim. 28 U.S.C. § 2254(b)(2). Accordingly, the Court proceeds to address Krammes' claims rather than dismissing the petition on the basis of Krammes' failure to exhaust state remedies for all his claims.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the following standard applies in federal habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

The grounds for granting habeas relief are therefore narrow. A state court's decision is "contrary to" clearly established law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court, but nevertheless arrives at a result different from that precedent. *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003). A state court's application is "unreasonable" when it identifies the correct governing legal principle from the Supreme Court's cases but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). But the state court's application must be more than incorrect or erroneous; it must have been "objectively unreasonable." *Id.* at 520–21. So "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The state court's decision is judged by the clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams v. Taylor*, 529 U.S. 362, 390, 412 (2000). And a state court's determination of a factual issue is presumed correct unless rebutted by clear and convicting evidence. *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**ANALYSIS**

I. <u>Other Acts Evidence</u>

In his first claim, Krammes alleges that the state trial court abused its discretion by allowing the prosecution to present a witness whose testimony was more prejudicial than probative of the truth. The witness was Krammes' older daughter, TW, who testified that Krammes sexually abused her twenty years earlier when she was a child. Krammes claims that the trial court erred by failing to articulate its reason for admitting the evidence and by failing to perform an appropriate analysis of the issue under state law. Krammes further alleges that the trial court erred by reading the wrong cautionary instruction to the jury.

The Michigan Court of Appeals determined that the disputed testimony was admissible under Mich. Comp. Laws § 768.27a and that the probative value of the evidence outweighed the prejudice to Krammes. As for the instructional error, the Michigan Court of Appeals stated that Krammes waived the issue by approving the instructions as read to the jury and that the error was harmless because the instruction read to the jury actually benefitted Krammes.

A. Legal Framework

To begin, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently,

6

there is no Supreme Court precedent that the state courts' rulings could be "contrary to" under AEDPA. *Id.* at 513.

Further, "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, [usually may not] be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause," *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017), and to the extent that any testimony violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

A state trial court's evidentiary error can rise to the level of a federal constitutional claim warranting habeas corpus relief if the error was "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69–70). In Michigan, however, when a defendant is accused of committing criminal sexual conduct against someone less than eighteen years of age, the prosecutor may introduce evidence that the defendant committed criminal sexual conduct against another minor, and the evidence may be admitted for any relevant purpose. Mich. Comp. Laws § 768.27a(1); *People v. Watkins*, 491 Mich. 450, 455, 471 (2012).

The danger of unfair prejudice must not outweigh the probative value of the evidence under Michigan Rule of Evidence 403, but when applying this balancing test, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins,* 491 Mich. at 456.

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

*Watkins*, 491 Mich. at 487–88.

B. Application

The Michigan Court of Appeals weighed the *Watkins* factors when addressing Krammes' claim, and it correctly pointed out that

> [t]he acts committed by defendant against the victim and against his older daughter were similar. Defendant's current and prior actions included sexual contact and penetration against his biological daughters while his daughters were minors and lived with defendant. Further, defendant's older daughter testified that defendant's actions toward her occurred frequently, there was no evidence of intervening acts, and the reliability of the evidence was supported by other facts in evidence, namely that defendant was convicted of an offense related to the sexual assault of his older daughter. In addition, there was a need for the evidence. There was an eyewitness to the incident, but the victim changed her testimony two days before the trial and the evidence supported the reliability of both the victim and the eye witness. While defendant's prior acts occurred 20 years before the incident occurred, that fact is not dispositive. The *Watkins* Court held that the list of considerations is "meant to be illustrative rather than exhaustive." Further, "[t]he remoteness of the other acts affects the weight of the evidence rather than its admissibility." *People v. Brown,* 294 Mich. App. 377, 387; 811 NW2d 531 (2011). Here, the extended time period

> between the acts does not outweigh the probative value of the evidence, which includes defendant's propensity to commit sexual crimes against his minor daughters, the similarity of his actions, and the necessity to support the reliability of the evidence. See *Watkins,* 491 Mich. at 486–488.

*Krammes*, 2014 WL 2881155, at *2 (internal citation omitted). The Michigan Court of Appeals reasonably concluded from its analysis that the probative value of the disputed testimony outweighed the prejudice to Krammes.

Although the Michigan Court of Appeals did not consider whether TW's testimony also was admissible under Michigan Rule of Evidence 404(b) (other crimes, wrongs, or acts),[3] the prosecutor argued that the testimony was admissible under Rule 404(b) to show Krammes' common scheme, plan, or system of doing an act. 11/2/12 Final Conference Tr., pp. 8–9; 11/14/12 Trial Tr., p. 124. This is a proper use of "other acts" evidence. *See United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (stating that, because two crimes of sufficient similarity can create a pattern or *modus operandi,* the district court admitted evidence of a similar act for a proper purpose); *see also* Mich. R. Evid. 404(b)(1) (stating that evidence of other crimes, wrongs, or acts may be admissible as proof of a scheme, plan, or system in doing an act); *People v. Sabin,* 463 Mich. 43, 66 (2000) (concluding that the trial court did not abuse its discretion in determining that the defendant's alleged assault of his thirteen-year-old daughter and alleged abuse of his stepdaughter shared sufficient common features to infer a plan, scheme, or system to do the acts, and stating that "[o]ne could infer from these common features that defendant had a system that involved taking advantage of the parent-child

---

[3] The trial court did not say whether it was admitting TW's testimony under Rule 404(b) or under § 768.27a, and the Michigan Court of Appeals stated on review of Krammes' claim that the trial court was not required to consider Rule 404(b) because the evidence was properly admissible under § 768.27a.

9

relationship, particularly his control over his daughters, to perpetrate abuse").

The trial court's jury instructions also served to ensure that Krammes had a fair trial. The trial court charged the jurors not to let sympathy or prejudice influence their decision. 11/14/12 Trial Tr., pp. 127–28.

The trial court also instructed the jury on evidence of other criminal sexual conduct for which Krammes was not on trial. The court stated that the jurors could use that evidence only to determine whether (1) Krammes acted purposely and not by accident, mistake, or because he misjudged the situation or (2) he had a plan, system or characteristic scheme that he had used before or since. The court charged the jurors not to consider the evidence for any other purpose and not to conclude that it showed Krammes was a bad person or likely to commit crimes. The court encouraged the jurors to find Krammes not guilty if they were not convinced beyond a reasonable doubt that Krammes committed the alleged crimes. *Id.*, pp. 135–36.

A trial court does not abuse its discretion by admitting "other acts" evidence when the court gives the jury an appropriate limiting instruction, *Perry*, 438 F.3d at 649, and even though Krammes contends that the trial court read the wrong jury instruction, the Michigan Court of Appeals determined that Petitioner waived this claim by approving the instructions as read to the jury. The Court of Appeals also stated that the error was harmless because the instruction was more restrictive than the jury instruction Krammes would have preferred. The state court's interpretation of state law binds this Court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

In conclusion, the trial court's decision to allow TW to testify about Krammes' sexual abuse of her as a child was not so fundamentally unfair as to deprive Krammes of a fair trial. And the state appellate court's ruling on the issue was not contrary to, or an unreasonable application of, any Supreme Court decisions. Krammes, therefore, has no right to relief on the basis of his evidentiary claim.

II. <u>The Sentence</u>

In his second and final claim, Krammes challenges his sentence of twenty-five to forty years for one count of second-degree criminal sexual conduct. Krammes points out that he was forty-nine years of age at sentencing and that the minimum sentence imposed was six years more than the minimum sentence recommended under the sentencing guidelines. He maintains that there were neither substantial, nor compelling, reasons to depart from the guidelines and that there is no guarantee he will be released before his maximum sentence is served. He concludes that the sentence imposed violates the principle of proportionality and, therefore, it is cruel and/or unusual punishment under the Michigan and Federal Constitutions.

The trial court stated that it was exceeding the sentencing guidelines because Krammes was a predator and because the court thought Krammes would abuse another child if he were released from jail. 12/4/12 Sentence Tr., p. 28. The Michigan Court of Appeals upheld the trial court's sentence after concluding that the trial court did not abuse its discretion when it departed upward from the sentencing guidelines range. The Court of Appeals stated that the trial court provided a substantial and compelling

reason for the upward departure and that the sentence did not violate Michigan's constitutional prohibition against cruel or unusual punishment.

The alleged violation of the Michigan Constitution is not a basis for habeas relief, because a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68. "[F]ederal habeas corpus relief does not lie for errors of state law[.]" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). And even though the Eighth Amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishments," U.S. Const., amend. VIII, the Amendment "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

A twenty-five-year minimum sentence is a substantial length of time for someone, like Krammes, who was forty-nine years old at sentencing. In fact, he contends that his sentence is somewhat comparable to a sentence of life imprisonment without the possibility of parole. But Krammes was sentenced as a habitual offender, and he concedes that his criminal record included four prior felony convictions, including one for indecent liberties with a child, and eight prior misdemeanor convictions. Given this record, and the seriousness of Krammes' current crime, the Michigan Court of Appeals reasonably concluded that Krammes' sentence was not disproportionate, nor cruel and unusual punishment.

The Supreme Court, moreover, has found life sentences for even relatively minor offenses to be constitutional. *See, e.g., Ewing v. California*, 538 U.S. 11, 30–31 (2003) (upholding a repeat offender's sentence of twenty-five years to life imprisonment for stealing three golf clubs); *Harmelin*, 501 U.S. at 994–95 (upholding a life sentence without the possibility of parole for possession of 672 grams of cocaine). If the life sentences in *Ewing* and *Harmelin* were not grossly disproportionate to the crimes, Krammes' sentence for a sex offense involving his teenage daughter is not grossly disproportionate. As such, his sentence is not cruel and unusual punishment, and the state appellate court's adjudication of Krammes' claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Krammes has no right to relief on the basis of his sentencing claim.

### ORDER

**WHEREFORE,** it is hereby **ORDERED** that the petition for writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not disagree with the Court's assessment of Krammes' claims, nor conclude that the issues deserve encouragement to proceed further. Krammes is free to request a certificate of appealability from the Sixth Circuit.

**IT IS FURTHER ORDERED** that if Krammes appeals the Court's decision, he may proceed *in forma pauperis* on appeal.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: November 30, 2017    United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 30, 2017November 30, 2017, by electronic and/or ordinary mail.

                                        s/David P. Parker
                                        Case Manager